GastoN, J.
 

 The most important question, arising upon the interpretation of this exceedingly imperfect and almost unintelligible will, is the construction of the bequest of
 
 *334
 
 “£100 to the testator’s brothers’and sisters’ children.” Three constructions are presented to us, the first that it is a gift of £100 to each of these children: the
 
 second,
 
 that it is a gift of £100 to each family of children of a brother or sister; and the third, that it is a gift of one £100 to the testator’s nephews and nieces equally to be divided between them. The testator, who is admitted to have been a man of. large fortune, commences his will by making a provision for his wife. He gives to her absolutely 12 slaves, and $500 in silver, and the beneficial use of all his other property, real and personal, for life. Then, after making some specific devises of land and a specific bequest to Nancy Huddleston of a negro girl for life, and after her death to the heirs of her body, he thus expresses himself: “ Item — my will is, after the death of my wife and the negroes given her be taken out, that all the rest of my negroes be sold, and all my stock of horses, cattle, sheep and hogs, my household and kitchen furniture, and also all my land that I have not given away, and all my ‘bonds and money on hand, and out of the proceeds arising therefrom, my will is, that I give one hundred pounds to my brothers’ and sisters’ children, to be equally divided amongst them children that are alive. I except, (here the testator names five or six) for they are good for nothing. After this is done, if there are funds left, my will is that $500 be raised and given to some promising young man of good talents and of the Baptist order, at the discretion of my executors. This being done and my just debts paid, and there be a over-plus left, my will is, that it be equally divided amongst my brother Francis Hester’s children. This being done and after the death of my wife, my will is, that my old man Sha-drach be set free.” To this will is subjoined a codicil, wherein, after giving to his wife the half of his household goods and furniture absolutely, and a few other bequests to his friends, he proceeds thus : “ After this being done, I want all my bonds collected and my funds on hand, and put out at interest during my wife’s lifetime, and then to be distributed as hereto directed. My will is, that there are some of my brother’s heirs is owing me, and I have their notes. I wish that to be taken out of their rateable part of the hun
 
 *335
 
 dred pounds, and then make the division, counting these notes so much of their part.” The testator left surviving him about seventy nephews and nieces, being the children respectively of his eight brothers and sisters. The fund, out of which the legacy to these children is directed to be paid, is amply sufficient for the payment to each of £100. Some of the notes referred to in the codicil, as being due to the testator from some of his brothers’ heirs, are for much larger sums than the pittance of the £100 which they would be entitled to receive, if the £100 is to be divided,
 
 per capita,
 
 among all the children of the testator’s brothers and sisters.
 

 Waiving all objections to the admissibility of extraneous evidence, as to the amount of the fund and the number of the legatees, upon a question of mere construction, it cannot be doubted but that such evidence never can change the operation of legatory words, which have a clear and precise meaning. The will is the law which the testator is permitted to make for the disposition of his property. He must be presumed to understand his own meaning, and where he does speak unambiguously, those whose duty it is to execute this his law, must understand him to mean what he has said.— It is the intention, which the will expresses, that the law carries into effect, and collateral evidence is not permitted to introduce an intention into the will, which, with the aid of that collateral evidence, the will does not express. Admitting too, as we certainly do admit, that in construing any clause of a will, we are not only at liberty, but are bound, to take into consideration every other part of it, to see if something be not there found which either directly or by plain inference qualifies or explains the sense of the clause to be construed, yet we hold it to be undoubted law, that an express and unequivocal disposition of property cannot be controlled, by any inference from the context, of a probable oversight or mistake of the testator in that disposition. His meaning, once explicitly declared, cannot be changed by any inference of a different meaning, unless such inference be necessary and beyond doubt. It is not pretended that, by an adherence to these rules, courts will ascertain in every case what a testator actually does mean ; but they are deemed, upon
 
 *336
 
 the whole, rules best calculated for ascertaining the meaning of testators, and there is no medium between adherence to the established rules of interpretation and the arbitrary discretion of Judges.
 

 Nowthedispositionto be construed is
 
 perse,
 
 and to a certain extent, perfectly explicit. “ Out of the proceeds arising therefrom, my will is, that I give one hundred pounds to my brothers’and sisters’ children, to be equally divided amongst them children that are alive.” Upon this there is nothing left for construction, unless it be, what is the time referred to, at which the children, amongst whom the division is to be made, should be alive. Fix that time when you may, at the death of the testator, or at the time of the division, so as to determine which of these children are meant, and then the language ¡S' as precise as any that could be used. The sum given is £100.. It is given to the children of the testator’s brothers and sisters,.and the sum so given is to be equally divided between those children alive at a particular time. The amount of the gift — the persons to whom it is given, and the manner in which these persons shall divide the thing given — are all stated. Every one of the children of his brothers and sisters, except those expressly excluded by the will, or who shall not be alive at the time prescribed by the testator, is to have an equal part with every other child in the division of this sum of £100, and no other interpretation can be adopted without doing violence to the language here used. There is no other part of the will, which furnishes a necessary inference of an oversight or mistake of the testator in the language used. In the codicil, taking notice that some of his brothers’ children owe him, he directs that the amount of their debts shall be deducted “ out of their rateable parts of the £100,” and the debts to be deducted exceed their rateable parts of £100, if no more than that sum is given to all of them collectively. Hence it is inferred, that a greater legacy is given to each than the a-mountof his debt, because a larger debt cannot be deducted from a smaller legacy.
 

 If the clause to be construed were really ambiguous, this argument might be entitled to much weight; but it is much
 
 *337
 
 easier and safer to give to the codicil an explanation, which shall reconcile it to the plain text of the will, than it is to overrule that plain text by a rigid adherence to the letter of the codicil. A direction that thetestator’s debtors, who are also his legatees, shall deduct their debts when they receive their legacies, is fully satisfied, when the first exceed the latter, by a deduction of them pro
 
 tanto.
 
 But the codicil furnishes, if it had been wanted, a conclusive argument against the first and most enlarged construction contended for, for it directs that the sums, to be deducted from the legacies to his .brothers’ and sisters’ children, shall be deducted from their
 
 rateable share of the
 
 ¿filOO. So that without doing violence to the codicil, as well as to the primary gift in the will, it must be held that no child of a brother or sister was to take more than a rateable part of that sum.
 

 When we take into consideration the extraneous circumstances relied upon, and these when admissible are fir be received with extreme caution, (for certainly the construction of every instrument is generally to be established upon what is to be found in the instrument itself,) it does indeed appear most extraordinary that the testator could have entertained any doubt that so large a fund as he had provided might not prove adequate to the raising thereout of a legacy of one hundred pounds.
 

 It is so extraordinary as to open an almost unlimited field of conjecture how to account for it.• One of these conjectures, and a
 
 highly prob able
 
 one, is, that there was an oversight or mistake of the testator in the amount of the legacy which he had given. But it is
 
 possible
 
 that he may have been in error as to the value of the fund provided, or have apprehended that the fund so provided might be greatly lessened by his debts. But be this as it may, we cannot say that these extraordinary doubts furnish an indubitable and necessary inference that he has given a larger sum than he did give. It is certain that be gave but £100. It is impossible that we can say, with all the explanation which this collateral matter furnishes, that he gave £100 to
 
 each
 
 of his brothers’ and sisters’ children when he directed that sum to
 
 *338
 
 be
 
 divided
 
 among them, and provided that such of these as owed him should deduct these debts out of their
 
 rateable parts
 
 of this £100. Nor can we declare that he ^as gi^1' £100 to each set of children as a family, for his gift was of £100 to all of the children, without reference to families, and the division of this sum thus given to all is directed to be made “equally among them children that are alive.” There is no help for it. There is but the sum of £100 given, and this sum is to be divided equally among-the testator’s nephews and nieces other than those excepted in the will, or who may not be alive at the time referred to. The true solution of all the difficulties in the case probably is, that this imperfect instrument- ought never to have been established as a will, It can scarcely be doubted but that it was an unfinished sketch, which the supposed testator had ’been unable to complete to his satisfaction, and was not designed in its then crude, imperfect form to take effect as his will. But it has been established as a will, and we are bound to take it as it is, with all its imperfections and absurdities, and apply in its construction the rales of law.
 

 It is admitted by the pleadings, that the widow of the testator dissented from the will, and had her dower and distributive share of his personal estate allotted to her as if he had died intestate, and it is further agreed by the parties, that since the bill was filed she has died. The time therefore has certainly arrived, when the proceeds of the estate are to be disposed of as the testator- has directed.
 

 We are of opinion that all the specific
 
 bequests
 
 in the will, and all the pecuniary bequests with the exception of the £100, are given immediately, and are excepted from the general disposition of the use of the testator’s property to his wife for life. This- is plainly declared as to all of them, except the bequest by way of loan to Nancy Huddleston, and after her death of a gift to the heirs of her body, of the negro girl Mary; and- we think this intent is manisfested though not expressly, in this bequest also. It is found among several devises where the testator takes special care to state that they shall be postponed in enjoyment to his wife’s death. The presumption fairly arises where he is silent in
 
 *339
 
 this respect, he intends an immediate gift. This construction tion supersedes the necessity of enquiring what efFect is produced upon these bequests by the widow’s dissent from the provision made for her by the-will.
 

 The direction by the testator that all his negroes,bonds,and other property not given away should be sold, and the proceeds after payment of his debts be divided and disposed of as in the will recited, evidently contemplates a sale to be made by his executors, and therefore confers an authority on his executors to sell the lands. No executors however were nominated, and we are asked whether this power can be exercised by the administrator with the will annexed. Previously to the provision made in our Revised Statutes, ch. 46, sect. 34, it is very dear that an administrator with the will annexed could not exercise a power to sell lands conferred on executors. The statute of 31.1-Ien. 8, ch. 4, which was the only statute then in this State modifying the common law on the subject, applied only to the case where part of the executors refused, and the others were willing to execute the power. But the act in our Revised Statutes authorizes the administrator with the will annexed to sell when all the .executors die or refuse to take on them the administration. The case of an administration with the will annexed where no executors were appointed, is not within the letter of the act.- But as it comes within the spirit of the act, and as the act is one of a remedial character, we are of opinion that the case is embraced within its purview. But unless there be.a necessity for the sale of the land — or even of the negroes and other property — the plaintiff ought not to sell, for the ulterior devisees and legatees have elected to take the property in kind. Their answers are explicit to that effect.
 

 Elizabeth Morris, one of the children of the testator’s brother Francis, died in the testator’s life-time leaving a child. It is clear that this child can claim nothing under a bequest to her mother. Admitting that if Elizabeth Morris had survived the testator, she would have taken a vested interest in an undivided part of the bequest of the £100, (a point on which we express no opinion,) her legacy lapsed
 
 *340
 
 by her dying before the testator; and our act which declares that a devise or bequest to a child shall in the event of such child’s death before the testator take effect and vest in the issue °f suc^ applies only where the devise or bequest is made by a parent.
 

 The direction asked of us, whether the children who take the legacy of £,100 are required to be alive at the death of the testator or at the death of the widow, is not shewn to be practically necessary. No facts are stated which raise the question, and it is not proper that we should answer judicially to hypothetical enquiries.
 

 The legacy of $500 to
 
 “
 
 some promising young man of good talents, and of the Baptist order, to be selected by the testator’s executor,” is void because of its indefiniteness.— There is no person who can claim it. Possibly it might be
 
 intended
 
 as a donation for a charitable use, which had it been distinctly expressed, might have enabled the court to give it effect. But if so, unfortunately this intent does not appear.
 

 Per Curiam. Decreed accordingly.