JAMES E. McNEELY and others v. ROBERT H. McNEELY.

*Construction of Will—Vested Remainder.*

A testator after devising to his wife for life, gave "all the lands that I have to my son, Billy, at the death of his mother, by him seeing to her "; *Held,* a vested remainder in the son. The words "by him seeing to her " do not operate as a condition to terminate or impair his estate, but a wish is thereby expressed that he should take care of his mother as provision was made for him at her death.

(*Leffter* v. *Rowland,* Phil. Eq., 143; *Nunnery* v. *Carter,* 5 Jones Eq., 370, cited, distinguished and approved )

SPECIAL PROCEEDING for Partition of Land commenced in the probate Court and heard on appeal at Special Fall Term, 1879, of IREDELL Superior Court, before *Gudger, J.*

This proceeding involved the construction of a will, and the plaintiffs appealed from the ruling of the court below.

*Messrs. Reade, Busbee & Busbee,* for plaintiffs.
*Messrs. J. M. Clement* and *J. M. McCorkle,* for defendants.

SMITH, C. J.   The plaintiffs allege that they and the defendant, the only child and heir of his deceased father, Billy McNeely, are tenants in common of the land described in their complaint which formerly belonged to David McNeely who devised it to his wife for life, and that the reversion descended to the plaintiffs and the intestate, his heirs-at-law.   The object of the action is to obtain partition.   The defendant answers, denying the tenancy in common and averring a sole seizin in himself, and he demands from the plaintiffs damages as rent for their use and occupation of the premises.   The issue thus raised was transmitted to the superior court and the facts and law by consent found by the judge.   His Honor found the following facts:

David McNeely, the owner of the land, died in the year 1852 leaving a will in which he devises the same as follows: " I give and bequeath unto Elizabeth my wife, her liking of the land I now own, and I give her all the household and kitchen furniture, to be divided among my children as she may think proper, with her horse and saddle; and I give her the use of all my negroes during her life, and then to be divided as follows: To my son James Ephraim I give my black boy Lewis, at the death of his mother, and what is called the meadow," &c., and at the death of her (a daughter just before named) mother " I give all the lands that I have to my son Billy, and my black woman Liza," and other slaves mentioned, " at the death of his mother, by him seeing to her."

The testator left four children, the plaintiffs and the devisee, Billy, who remained on the plantation with his mother, superintending and working until his death in 1861. The defendant, then between five and six years of age, is his only child. Elizabeth, the testator's widow, died in 1877, having been " bountifully supplied " while living from the proceeds of her farm. Her family consisted of herself, a daughter and her son Billy until his death; and since, she has not been assisted by any one on his behalf.

His Honor declared the law governing the case upon the facts found to be this: The intestate Billy, by virtue of the devise, had a vested estate in remainder in the land to take effect in possession at the death of his mother, the life tenant; and this remainder at his death descended to the defendant, his son, and only heir-at-law. The words annexed to the devise, " by him seeing to her," his mother, were not operative as a condition, precedent or continuing, to terminate or impair his estate, but was the expression of a wish that Billy would look after and take care of his mother and her interests in view of the provision made for

him at her death. The sole seizin is therefore in the defendant.

The only question before us on the appeal is as to the construction of the clause, giving the remainder to the son Billy, and the force and effect of the superadded words upon the estate devised to him.

There is scarcely any labor imposed upon the judicial mind more difficult and less satisfactorily performed than that employed in interpreting wills and ascertaining therefrom their legal operative effect. Without any prescribed form (except in the manner of execution) they are often prepared by testators themselves or by others not accustomed to the careful and accurate use of words, and there are few precedents found in the reports, in most cases, to guide in resolving the perplexing enquiry into their meaning and effect. Each case must be determined by an examination of the testator's language contained in the will itself, in the light of the facts attending its execution and to which it has reference, in arriving at the intent of the instrument as a whole and of its several provisions. The rules laid down by Vice Chancellor Wigram in his useful treatise on Wills, are the proper basis upon which to undertake the task of construction, and they are frequently, as in the present case, of little service to the court.

In the will now under consideration the words which give rise to the controversy—"*by him seeing to her*"—are in themselves vague and indeterminate, and if an essential and defeating condition of the gift, would be very difficult of application. What is meant by a "seeing to" the widow, and what neglects fall short of that duty? How much of personal care and attention in the son to the mother is requisite? and how is the dividing line to be run between such omissions as are, and such as are not fatal to the devise? This perplexity is manifest in the facts found by His Honor, and titles would be rendered very precarious and

uncertain if such matters *in pais* were allowed to defeat a vested estate.

There have been several cases called to our attention in the argument, but they do not aid in the present enquiry, as a brief reference will show :

In *Leffler* v. *Rowland*, Phil. Eq., 143, the question was, whether the legacy to a son dying before the testator was transmitted to the issue of the son under section 25, chapter 119 of the Revised Code, and it was determined that the services required to be rendered to the testator during his life and in the payment of his debts, were the controlling motives of the testator, and a condition of the gift which failed by reason of the death of the intended legatee.

In *Nunnery* v. *Carter*, 5 Jones Eq., 370, the bequest was to the wife for life, of certain personal property and then to be James Carter's " provided he take care of his mother ; if not, to be whose that does take care of her." The wife died before the testator, and the condition becoming impossible it was held that the legacy vested absolutely.

An important criterion by which to determine the testator's purpose is the absence of a limitation over in case of defeasance, and words are often construed not to defeat the gift, when no provision for such contingency is made. Thus when the testator devised to his wife during widowhood and in case of her marriage " that she must quit the plantation," and no devise over is made, it was declared that the estate was not fettered by those words, and the preceding restriction upon the personal, was applied to the real estate. This conclusion was arrived at because there was no subsequent contingent disposition of the land. We therefore concur with His Honor in opinion that the sole seizin in the land proposed to be divided is in the defendant. There is no error and the judgment is affirmed. This will be certified, &c.

No error.                                    Affirmed.