J. F. CHARD et al v. M. F. WARREN, Trustee, et al.

(Decided March 8, 1898.)

*Action to Foreclose Deed of Trust—Referee's Findings—Failure to Except to Findings of Referee—Practice—Payment and Satisfaction—Parol Evidence to Explain Deed—Estoppel in Pais—Mortgage, Construction of Clause In.*

1. The finding of a referee as to a particular fact should be confirmed if not excepted to.

2. Where an agreement between a debtor corporation and its creditors recited that the debt should be settled by the notes of a third person to be secured by a mortgage or deed of trust, and such notes so secured were executed, the debts of the corporation were thereby extinguished.

3. Where, in an action to foreclose a mortgage, no answer or demurrer was filed, and no attempt was made to impeach the deed for fraud or mistake, or to reform it, and the deed clearly sets forth the names of the creditors, debtor, the amounts of the debts to be paid, the property conveyed as security, and the power of sale, and the method of application of the purchase money, parol evidence will not be allowed, on a motion to confirm the sale and to make the prescribed application, to explain the deed in any way.

4. Creditors who claim under a deed of trust and file their claims to share in the proceeds of sale, cannot be heard to impeach its provisions.

5. Where, in a deed of trust for creditors, the notes secured thereby were classified as "A" and B" notes, and it was provided that the proceeds from the sale of pine timber on the lands conveyed should be applied monthly, as it was cut, to the credit of certain of the "A" notes, but did not require the mortgagor should cut the timber and so apply the proceeds, and the deed provided that, in case of a sale of the land, the proceeds should be applied to the *pro rata* payment of all the "A" and "B" notes; *Held* that the stipulation was not a specific appropriation of all the pine timber on the land to payment of such "A" notes.

CIVIL ACTION to foreclose a deed of trust covering a large tract of timber lands in DARE County, pending in the Superior Court of said County. No answer or demurrer was filed and a decree of sale was entered, by consent, at May Term, 1896. The sale was made on 18th November, 1896, and the motion to confirm the report of sale was heard by *Bryan, J.*, (by consent) at CHAMBERS in Raleigh on 14th January, 1897, and at Newbern on 16th June, 1897. The plaintiff purchased the land as trustee for the holders of the notes secured by the deed of trust. The Eastern Carolina Land, Lumber and Manufacturing Company, a former owner of the land, and under whose mortgage to secure its bonds it had formerly been sold, filed a petition claiming that the proceeds of the sale should first be applied to the payment of certain debts owed by it, evidenced by a part only of the notes secured by the deed of trust to the plaintiff, and that the uncut pine timber on the land should be applied to the payment of said notes. His Honor refused to allow testimony to explain or modify the deed of trust, and the defendants (and certain of the holders of the notes secured by the deed of trust) appealed.

*Messrs. Shepherd & Busbee*, for Buffalo Banks (note holders.)

*Messrs. F. H. Busbee* and *E. F. Aydlett*, for defendant, and other creditors (note holders.)

MONTGOMERY, J.: One of the defendants, the Eastern Carolina Land & Lumber Manufacturing Company, in order to secure an issue of bonds, executed and delivered to the American Loan and Trust Company a deed of trust upon the lands described in the complaint. The bonds, in various amounts, were placed by the company in the hands of the American Exchange Bank of Buffalo, New York, the Bank of Commerce in Buffalo, the People's Bank of Buffalo, W. A. Ensign & Son, of North East Pennsylvania, and the Phœnix National Bank of New York, as collateral security, for certain indebtedness of the company. For default in the payment of the indebtedness of the company, proceedings in foreclosure were instituted by the Trust Company in the U. S. District Court for the Eastern District of North Carolina, and a decree for the sale of the company's lands described in the complaint was made, in which decree Mr. Pruden and Mr. Busbee were appointed commissioners to make the sale. They made the sale, and their report thereof was duly confirmed by the Court. The lands, at the commissioners' sale, were purchased by and conveyed to Melvin F. Warren as trustee for the bond-holders—creditors of the company above named—it being understood and agreed that Warren, trustee, upon his receiving a deed to the lands, should execute and deliver a mortgage to James F. Chard, the plaintiff in this action, as trustee, for the bond-holders above named. The plaintiff in this action, in the complaint, alleges that in pursuance of that understanding and agreement, and in execution of his trust, the defendant Warren, trustee, for the purpose of securing the pay-

ment of certain promissory notes, aggregating $181,-913.09, which notes are particularly described in the complaint, and executed by Andrew Brown to the said bond-holders, by his deed of trust dated 7th day of January, 1895, conveyed to the plaintiff Chard the lands which he (Warren) had purchased at the sale made by the commissioners.

The present action was begun in the Superior Court of Dare County by Chard, trustee, against Warren, trustee, and John Fox, who is the purchaser of the equity of redemption of the company in the lands described in the complaint, to foreclose the mortgage (a deed of trust) made by Warren, trustee, to Chard, trustee. At the May term, 1896, of the Court, there was entered a judgment of foreclosure, no answer or demurrer being filed by either one of the defendants. · R. T. Gray was appointed commissioner to make the sale of the lands. In the same judgment he also was appointed a referee to ascertain and report to the Court, who were the holders, and in what amounts, of the first mortgage bonds on the 7th of January, 1895, the date of the execution of the deed by Warren, trustee, to Chard, trustee, and who were the holders, at the date of the sale by the commissioners Pruden and Busbee, of the notes mentioned and secured in that deed; and also what taxes were due and unpaid on the land, and also what money, if any, had come into the hands of the trustee, or any one for him, from the sale of pine timber on the land. The sale was made by the commissioner, and a report of the same was confirmed by the Court. His findings on the matters referred to him were approved, except that the one declaring M. P. Brown to be the owner of a certain one of the notes in the sum of $673.09 secured in the deed from Warren to Chard was set aside, and the fact was found by his

Honor that the note was not her property but had been paid by the maker, Andrew Brown. M. P. Brown excepted to this ruling. The exception must be sustained.

There was no exception by any of the parties to that finding of the referee, at any time, and it ought to have been confirmed by the Court because there had been no exception filed to the finding of the referee on that point. *Green* v. *Castlebury* 70 N. C., 20.

On the 14th of January, 1897, upon the confirmation of the report of the commissioner Gray, and the making of the order that he convey to Chard, the plaintiff in this action, for the creditors of the company as tenants in common in the proportion and interest hereinafter to be declared by the Court, there arose a question as to the application of the proceeds of the sale of the land to the notes secured in the deed, some of the creditors insisting that they be applied according to the express terms of the deed, while others of the creditors insisted that the application should be made according to an alleged understanding and agreement in writing different from the application required by the deed of trust, made by all of the parties before the sale by Pruden and Busbee to Warren, and which understanding and agreement they alleged formed a part of the trust upon which Warren held the title to the land. Whereupon the matter was continued for a future hearing as was, also, the question whether any evidence would be heard or considered by the Court in addition to the deed of trust. Either party in the meantime was allowed to take evidence by deposition upon proper notice. After the order of the 14th January, 1897, the company was made a party to the proceeding, and the company, M. H. Brown and the Phœnix National Bank took the deposition of certain witnesses. By consent of all the

parties, the various questions embraced in the order of the 14th of January were heard by *Bryan, J.*, on the 16th of June, 1897. By consent his Honor found certain facts as follows: "At the sale made by commissioner Gray and before the sale began, Busbee, in behalf of the noteholders, the Phœnix bank, M. H. Brown and the guarantor, the Buffalo City Mills (Limited), gave notice that under the terms of the deed of trust to Chard, the value of the pine upon the property was to be applied to the "A" notes in the manner set forth in the deed; that he would not ask that the sale should stop, but would claim that the value of the pine should be ascertained in some manner to be determined by the Court, either by sale or valuation, and applied to the "A" notes in the manner set forth in the deed. No pine on the land had been cut since the execution of the trust. The representatives of the Buffalo Banks were present and did not admit the claim, but insisted that the pine went with the land." Thereupon, the Phœnix National Bank, M. H. Brown, Warren, trustee, and the company offered to introduce the deposition of certain witnesses for the following purposes:

1. To show the extent and value of the pine, to the end that the value of the same, either as proved or by a sale, or in some way to be directed by the Court, shall be ascertained and applied to the payment of the special notes mentioned in the deed of trust.

2. To prove the agreement between the Eastern Carolina Land, Lumber and Manufacturing Co., and all the Buffalo Banks and the Phœnix National Bank, which is mentioned in the deed of trust and forms a part of it, as is contended, to show the nature of the trust to M. F. Warren, the persons and corporations for which he was trustee, the nature of his trust and the scope of it,

CHARD v. WARREN.

for the purpose of construing the deed of trust, and particularly the application of the various classes of notes to the payment of the purchase money.

3. To prove that Chard, trustee, and all the Buffalo Banks had full knowledge of the agreement and trust under which Warren held, and Chard, trustee, accepted the conveyance from Warren.

4. To explain the various latent ambiguities in the deed of trust, as set forth in the agreement, and to be further set forth in the bill of exceptions.

5. Generally, as competent under the admitted facts of the case and the language of the deed.

Objection was made to the introduction of the deposition by the Buffalo Banks and Ensign & Son. The Court excluded the testimony, and there was an exception to this ruling made by those who had offered it.

We will consider in the first place the exception as it relates to the Land Company. In the petition of the company to be made a party to the action it is stated that the only indebtedness of the company at the time of the execution of the deed from Warren, trustee, to Chard, trustee, was represented by the notes of class "A" mentioned in the pleadings and in the deed from Warren to Chard (amounting to $124,428.20, when the commissioner Gray took the account) and that the notes classed as "B" (amounting to $57,524.34,) in the deed and pleadings did not form any part of the indebtedness of the company. It does not appear from the petition what indebtedness was represented by the "B" notes. It was alleged in the petition that at the time of the sale of the lands by Pruden and Busbee to Warren, trustee, the lands were held by Warren in pursuance of an agreement entered into by the Company and all the

creditors of the company that Warren should purchase
and hold the lands in trust to secure the debts of the
company; that the agreement was in writing. An
alleged copy of the agreement is filed with the petition.
It is stated further in the petition that afterwards
another agreement was prepared by the creditors, ten-
dered to the company, and that the President of the
Company, knowing that its provisions were in excess of
his authority, nevertheless, executed it. A copy of this
last agreement is filed with the petition, and upon the
agreement contained in that instrument it is agreed
that the deed from Warren to Chard was executed.
The company further alleged in its petition that the
company never accepted or consented to the execution
of the deed. It was further alleged in the petition that
the trust under which Warren purchased the lands was
for the primary and sole purpose of securing the indebt-
edness of the company and for no other purpose, and
thet all the creditors had knowledge of the purpose of
the trust. It is further stated in the petition that all
of the debts named in the deed from Warren to Chard
ought, in equity, to be postponed to the payment of the
indebtedness of the company, which indebtedness the
petitioner declares is represented by the "A" notes.
The concluding paragraph of the petition, which sets
forth the alleged equity of the company, upon which it
asks for relief, is in the following words: "Your peti-
tioner is further advised that it is the intention of the
holders and owners of the "B" notes mentioned in the
pleadings and in the proof of the debts made before
Gray, referee herein, (the purchaser at the sale made by
commissioner Gray and to whom the title of said lands
as directed by the decree has been made by the com-
missioner) to receive in part payment for the lands the

"B" notes, as well as the "A" notes, thereby entirely violating the trust under which the lands were conveyed to Chard, trustee, by Warren, trustee, and thereby leaving your petitioner largely indebted to the various banks in Buffalo, whereas under the agreement heretofore set forth, your petitioner's indebtedness would be almost entirely discharged by the application of the "A" notes to the payment of the purchase money, which application your petitioner is advised and avers is the legal and proper application." The company has no equity of redemption in the property. for it has conveyed that right to Fox, who is not one of the appellants.

The company's contention is that by the terms of the agreement and understanding under which Warren purchased and held the lands, Warren was to execute a mortgage securing only the indebtedness of the company which it alleges is represented by the "A" notes alone, and that if the "B" notes are to share equally with the "A" notes in the distribution of the proceeds of the sale, as provided in the deed. "such a course would lead your petitioner (in the words of the petition) largely indebted to the various banks in Buffalo; whereas, under the agreement heretofore set forth, your petitioner's indebtedness would be almost entirely discharged. by the application of the "A" notes to the payment of the purchase money." But the company need have no concern about any alleged balance that might remain unpaid on any of the notes secured in the deed. Both of the agreements, "A" and "B," referred to by the petitioner, are a discharge in full of all the indebtedness of the company to all of its creditors named in the deed.

In the agreement referred to in the petition of the company, marked "A," and which the company alleges was a true understanding, it is stated that in the matter

of the settlement of the indebtedness of the company to its creditors, it is agreed by the parties that the indebtedness is to be settled by the notes of Andrew Brown, and secured by a mortgage by Warren to Chard upon the lands held by Warren as trustee.    It appears, therefore, that the petitioner owes no debts to the creditors, the same having been discharged in express terms by the notes of Andrew Brown and the execution of the mortgage to secure them by Warren to Chard, and the petitioner therefore has no equity in the premises, because he has no interest in the matter.    If the company should be sued on any alleged balance after the application of the proceeds of the land sale to the notes secured by the deed, the company could, in law, plead the discharge and satisfaction of its former debt.    In *Symington v. M'Lin*, 18 N. C., 291, this court said: "Even in the case of a previous debt, if the creditor by agreement with the debtor, accept the note of a third person payable to himself, it is presumed to be in satisfaction, and extinguishes the original consideration, and may be pleaded in bar or given in evidence under the general issue."

The creditors, who are appellants, have filed no answer or demurrer to the complaint.    There is no effort on their part manifested in the pleadings to impeach the deed for fraud or mistake, or to reform it. They simply come into the cause, after the sale of the lands has been made by the commissioner, and confirmation thereof made by the Court, and by testimony, *aliunde* the deed, offer to prove the nature of the trust to Warren, the person and corporations for which he was trustee, and particularly they say to show the application of the various classes of notes to the payment of the purchase money, and to explain the various latent

ambiguities of the deed as set forth in the alleged agree-
ment.   The deed from Warren to Chard sets forth with
entire clearness the names of the creditors and the
amounts of their debts, the name of the debtor, the
property conveyed as security, the power under which
Warren acted, and the manner of the application of the
proceeds of the sale.   It is true that in the deed from
Warren to Chard the notes were classed as ''A'' notes
and ''B'' notes, but there was a clause in the deed
which declared that, if default occur in the payment
of any of the ''A'' notes or interest, then all of said
notes shall be considered of the same force and
effect without regard to classification.   Default was
made in the payment of the ''A'' notes, and because of
that default the sale was made.   The only ambiguity in
the deed was as to the amount of bonds owned by the
creditors as affecting the appropriation of the first fifty
per cent of the proceeds of the sale.   This was referred
to the referee who reported on the matter, and to his
report there was no exception by any of the parties.

It seems plain, therefore, that any testimony, offered
for the purpose of showing that Warren properly exe-
cuted his trust when he executed his deed to Chard,
could not be received because it would be useless and
immaterial, the deed itself being perfectly clear and
consistent; and it would seem equally as clear that any
testimony, offered to show that he did not faithfully and
properly execute his trust, could not be offered and
received because there was no proceeding in this case to
impeach the deed or to have it reformed.

But beyond this, how can the creditor appellants,
who claim under this deed, be heard to impeach it?
They have filed their claims before the commissioner
and have proved them.   The security for their debts

depends upon the provisions of the deed from Warren to Chard, and one who claims a right under a deed cannot be heard to impeach its provisions. *Fort* v. *Allen*, 110 N. C., 183. In Bigelow on Estoppel, 683, it is said: "Upon a principle similar to that applied to persons taking under wills, beneficiaries under a trust are estopped by claiming under it to attack any of its provisions."

One other question remains for consideration. The deed from Warren to Chard provides that any and all proceeds from the sale of the pine timber on the property covered by the mortgage should be accounted for monthly, as it was cut by the mortgagor or his assigns, to the party of the second part or his successors or assigns, and immediately applied pro rata among the holders to the payment of certain of the "A" notes. The appellants contend that that provision of the deed was a specific appropriation of the whole of the pine timber on the lands to those particular notes, and that, notwithstanding the fact that no pine timber has ever been cut, the whole ought now to be valued and disposed of for the benefit of the creditors who hold the particular notes. We do not take this view of the matter. There was no requirement in the deed that the mortgagor or his assigns should cut the pine timber and apply the proceeds to the notes. The provision is a simple direction that, from such sources of revenue from the lands as might come into the hands of the mortgagor, that part of it derived from the sale of the pine timber, whether in small quantities or large (any and all), should be applied to the particular notes. There being no requirement that all of the pine timber should be cut by the mortgagor and applied to the "A" notes, how could any rule be now laid down by which a referee or the Court could find how much of the timber should be cut

and applied to the debts, whether a small quantity or a large quantity?

There was no error in his Honor's ruling refusing to receive testimony on that point. The defendant Warren has no interest in the controversy and it is not necessary therefore to discuss his appeal.

There was no error in the rulings of the Court except in its finding as a fact that the note denominated in the report of Gray, referee, as Phœnix 1 A for the sum of $673.09 claimed by M. H. Brown, had in fact been paid and that the same should not be allowed to participate in the distribution of the proceeds of the sale of the land.

The judgment is affirmed, except that it must be so modified as to have the share of M. H. Brown in the lands, now held by Chard, trustee, increased to the extent of the value of the note described as "Phœnix 1 A," which note belonged to M. H. Brown, according to the finding of the referee, which was not excepted to by any of the parties.

Modified and affirmed.