TRIPHENIA E. (BERRIER) COOK v. ADAM L. SINK.

(Filed 9 December, 1925.)

**1. Equity—Estoppel—Wills—Devise—Heirs at Law.**

A devise of the entire real and personal estate to the testator's wife and by a later item certain parts thereof to his two sons to see that their mother "don't suffer their care," etc.: *Held*, a division of the lands by the heirs at law subject to the terms of the will, and their consent in relation thereto is an equitable estoppel *in pais* against their claim that their mother acquired a fee-simple title, and that they could claim as her heirs at law, after her death, intestate.

**2. Appeal and Error—Trials in Lower Court.**

Ordinarily the case on appeal is heard and determined according to the theory upon which it was tried in the Superior Court.

**3. Estates—Wills—Devise—Conditions Subsequent.**

A devise of land to the testator's son and daughter "if either of them fail to see that their mother don't suffer their care, if either of them fail to take care of her their part to go to someone who will care for her, for them, their bodily heirs, if any, if none to next of kin": *Held*, the testator's named children, did not take an estate upon condition subsequent, but acquired their designated portion subject to a charge thereon for the support of their mother.

**4. Same—Wills—Intent—Forfeiture—Re-entry.**

In order to create an estate upon condition subsequent by will that will work a forfeiture upon condition broken, the intent of the testator must clearly appear from the construction of the will, reasonably employing words that create a forfeiture or rights of reëntry.

COOK *v.* SINK.

**5. Estates — Conditions Subsequent — Covenants — Damages — Liens—Wills—Devise.**

A devise to the testator's son and daughter upon condition that they care for their mother, etc., will be construed to avoid a forfeiture, and when they take under the terms of the will and breach the condition, they take as upon a covenant, for the breach of which damages to the extent of the support provided for will be awarded and declared a lien upon their respective lands.

**6. Same—Recital—Estoppel.**

Where the son and daughter take lands under the will of their father charged with the support of their mother, and the mother lives with the daughter under an agreement that the son will contribute his share, and the son has conveyed his lands subject to this agreement: *Held*, the receipt by the daughter in full from the son's grantee for the latter's obligation, fairly given, over her signature, will preclude her from a further recovery and by this and other of her acts in this case she is estopped to claim damages from her brother in breach of his implied covenant.

ADAMS and VARSER, JJ., concur in result.

APPEAL by defendant from *Schenck, J.,* July Term, 1925, DAVIDSON Superior Court. Reversed.

Relevant facts: This action was brought by plaintiff against the defendant to recover the possession of 100 acres of land, less 51¾—to wit, 48¼ acres. In the will of W. A. Berrier, the material clauses are as follows:

"First. I give and bequeath unto my beloved wife Elizabeth all my real and personal property, to have the right to collect all debts coming to me, to pay all debts I owe, to sell real or personal property for her own use and benefit at my death to make sale, sell all loose property she doesn't need for her own use and benefit, the money for same to pay what I owe, if any left to her own use.

"Second. I give unto my son D. T. Berrier and my daughter Triphenia E. Berrier, 200 acres of land to be equally divided between them on the east run by a north and south line, then divided by east and west line, for David to have the south end provided he pay Triphenia $125.00 for to finish the house and dig a well, if David want to do that, for Triphenia, if David wont pay the $225.00 to Triphenia for her to pay it to same and for her to have the south piece for them both to see that their mother dont suffer their care, if either of them fail to take care of her for their part to go to some one who will care for her, for them their bodily heirs if any, if none to next of kin.

"Third. I give to my daughter Mary D. Shoaf 65 acres of land on the south east corner, run so as to include the house and spring known as the Robert house, and a cartway over the other lots to the public road.

"Fourth. To Wm. H. Berrier the balance of my land what is more or less during his life, at his death to his bodily heirs, if none to next of kin, for him to have the accounts found against him at my death."

W. A. Berrier died 3 May, 1902. On 19 October, 1904, Bettie Hepler (so designated in deed now the plaintiff, Triphenia E. Berrier Cook) and her husband, J. F. Hepler, Mary D. Shoaf, and W. H. Berrier made; executed and delivered to David T. Berrier a deed which was duly recorded 29 June, 1905, in the register of deeds office for Davidson County, N. C., for 100 acres of land more or less setting forth the metes and bounds. The locus, 48¼ acres, in controversy is a part of the land. The deed had the following recitals: "That said parties of the first part, in consideration of one dollar and the further consideration of a division of the lands of W. A. Berrier to him paid by said party of the second part, the receipt of which is hereby acknowledged . . . This being the part of David T. Berrier in the division of lands of W. A. Berrier under will of said W. A. Berrier. . . . And the said parties of the first part covenant that they are seized of said premises in fee, except the interest of Mrs. W. A. Berrier under said will, and have right to convey the same; that the same are free and clear from all encumbrances and that they will warrant and defend the said title to the same against the claims of all persons whomsoever."

On 29 June, 1905, David T. Berrier made, executed and delivered a deed to Adam L. Sink, defendant, which deed was duly recorded in the office of the register of deeds of Davidson County, N. C., on the same date as deed. The consideration was $1000 stated in the deed. The land conveyed was the 100 acres by metes and bounds (less 51¾) with recital: "This being the part of David T. Berrier in the division of lands of W. A. Berrier under will of said W. A. Berrier. Less 51¾ acres sold to R. L. McCrary. For boundaries see Deed Book No. 58, page 277, in office of register of deeds for Davidson County, N. C." The covenant is as follows: "And the said parties of the first part covenant that they are seized of said premises in fee, except the interest of Mrs. W. A. Berrier under said will, and have the right to convey the same in fee simple; that the same are free and clear from all encumbrances and that they will warrant and defend the said title to the same against the claims of all persons whomsoever."

Elizabeth Berrier, wife of W. A. Berrier, died 27 March, 1924, 88 years old. After the death of W. A. Berrier, his son, David T. Berrier, lived at the old home place part of same now claimed by defendant, Adam L. Sink. Elizabeth Berrier stayed with her son, David T. Berrier, at the old home place about a year after the death of her husband. David married and his mother then went to live with the plaintiff and

lived with her until her death. David lived on the old home place until 1905, when he sold part of it to defendant, who has been in possession ever since. Plaintiff can read and write. She never made claim on R. L. McCrary for the part of the 100 acres of land, to wit, 51¾, deeded him by David T. Berrier. She got a deed from David T. Berrier and the others at the time she and others made deed to David in the land settlement under the will.

Plaintiff testified: "I never asked defendant for anything. He paid me some money every year. Paid the rent. . . . Neither D. T. Berrier nor defendant paid me $225 provided for in the will. . . . Defendant gave me a check for $25 a year. He did not say 'here is a check for your mother. I gave it in your name for I knew she was not able to get the check cashed.' Sometimes he would see me here in town. Never would bring it to me. Never did say what the check was for, and I did not ask him, and I cannot tell you how much it amounted to, but I reckon in all it would amount to $500 or $600 he paid in the time he had the land until mother's death."

. Adam L. Sink testified in part: "I am in possession of the land conveyed by the deed of David T. Berrier to me, offered in evidence, and have been in possession of it for about 19 years. David T. Berrier was in possession of the land when I bought it. I don't suppose there is over 9 or 10 acres in cultivation. There is a very old dilapidated building on it. I have other land adjoining it. The rental value of the land I bought from David T. Berrier is worth about $25 per year. I bought the land. I don't know whether Elizabeth Berrier was living with David T. Berrier or Bettie Hepler (plaintiff). After I bought the land I had an agreement with Bettie Hepler, plaintiff, as to taking care or assisting in taking care of her mother, Elizabeth Berrier. She was to care for her, support her, and anything that came up. I paid her the $25 in advance. I think probably in January, 1906. In consequence of this agreement I paid Bettie Hepler and took her receipt, signed Bettie E. Hepler, W. H. Berrier, witness.' Berrier is her brother. . . . Since that time I would make payments first of every year from 1906 to 1924. Never failed to pay it. Paid $25 a year and from that I went to $50 a year. Last few years paid $60. Did not take receipts—only the checks. She said she would receipt me any time I called for it. I found some checks that I have paid last 2 years. I did not save the checks. Did not think of any dispute. It was perfectly agreeable and everything satisfactory. Bettie never asked me for anything further; always said it was a plenty; I had done my part. . . . I never paid any rent on the land. I was to pay so much for caring for her mother, and she never asked for a brownie more."

Defendant introduced the following:

LEXINGTON, N. C., January 1, 1906.

Received Jan. 1, 1906, of A. L. Sink, $25.00 dollars in full for all claims I have or may have against him for support of my mother to Jan. 1, 1907. The same is in lieu of David T. Berrier's part toward the support of my mother.

Witness: W. H. Berrier.                     T. T. HEPLER (Seal).

"A. L. SINK, *Grocer.*                                              No. 594.

LEXINGTON, N. C., January 31, 1922.

Pay to the order of Bettie Hepler Cook $60.00.
For Board and Dr. Bill.                     A. L. SINK.

   To Commercial & Savings Bank, Lexington, N. C.
   (Endorsed by Bettie Hepler Cook.)

"A. L. SINK, *Grocer.*                                              No. 38.

LEXINGTON, N. C., January 31, 1923.

Pay to the order of Bettie Cook $50.00.
For her mother's support.                     A. L. SINK.

   To Commercial & Savings Bank, Lexington, N. C.
   (Endorsed by Bettie Cook.)

"A. L. SINK, *Grocer.*                                              No. 482.

LEXINGTON, N. C., January 19, 1924.

Pay to the order of Bettie Cook $60.00.
For mother's support in full—paid to January, 1925.     A. L. SINK.

   To Commercial & Savings Bank, Lexington, N. C.
   (Endorsed by Bettie Cook, W. H. Berrier.)"

Plaintiff, in her prayer for relief demands judgment for the said land and so much per year for its retention, etc.

In reply to the answer plaintiff demands judgment for the land; and if she is estopped by her deed from the recovery of the land, she prays for judgment for a lump sum and that it be declared a lien on the land.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Is the plaintiff the owner and entitled to recover of the defendant the lands described in the complaint? Answer: Yes.

"2. What amount, of rents, if any, is the plaintiff entitled to recover of defendant for the detention of said lands? Answer: Not any."

Other facts and pleadings necessary for decision of this case will be stated in the opinion.

*Phillips & Bower, Walser & Walser and Z. I. Walser for plaintiff.*
*J. R. McCrary and Raper & Raper for defendant.*

CLARKSON, J. The will of W. A. Berrier, which we are called upon to construe, from its language seems to have been drawn *inops con silii.* In the first item is: "I give and bequeath unto my beloved wife Elizabeth all my real and personal property."

Immediately after W. A. Berrier's death, 3 May, 1902, David T. Berrier lived at the old home place, a part of which place (48¼ acres) is now, by warranty deed from David T. Berrier, claimed by defendant who is in possession of same. Elizabeth Berrier lived there about a year and then went and lived with plaintiff and lived with her continuously until her death, 27 March, 1924—over 20 years. The division deed from plaintiff and others to David T. Berrier, made 19 October, 1904, described his part of the land, under item 2 of the will, by metes and bounds, and included the locus in controversy. We think if Elizabeth Berrier had a fee-simple title under the will, at her death, plaintiff, one of her heirs at law, or the others who signed the deed, could not now claim the land in controversy as heir to the mother. The deed from plaintiff and others (with full covenants of warranty), under the facts and circumstances of this case, operates as an equitable estoppel against the parties and privies. Plaintiff and the other heirs at law took under the will as did their mother, Elizabeth Berrier, from the same common source—W. A. Berrier. In the division of the land under the will it was construed and plaintiff and the other devisees so acted, and their mother, Elizabeth Berrier, for over 20 years so acted, as if no estate in fee of the locus in controversy under the will was devised to Elizabeth Berrier. The plaintiff and other devisees took under the will contrary to a fee in Elizabeth Berrier, and neither plaintiff nor the devisees can now claim as heirs of law of their mother. They cannot "blow hot and cold in the same breath." Any other view would be inequitable and unconscionable.

Plaintiff or the other devisees cannot take inconsistent positions. "Upon a principle similar to that applied to persons taking under wills, beneficiaries under a trust are estopped, by claiming under it, to attack any of its provisions. . . . So, also, one who accepts the terms of a deed or other contract must accept the same as a whole; one cannot accept

40—190

part and reject the rest." Bigelow on Estoppel, 6 ed., p. 744. *Fort v. Allen,* 110 N. C., 191; *Chard v. Warren,* 122 N. C., 86; *Freeman v. Ramsey,* 189 N. C., 790.

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim, or conduct to the prejudice of another." 16 Cyc., p. 785; *Holloman v. R. R.,* 172 N. C., p. 376.

The $225 plaintiff claimed she never received under item 2 of the will, if she did not waive this by the division deeds, she has no claim on defendant—the grantee of her brother.

Plaintiff, in her brief, says: "Is plaintiff, appellee, estopped to claim the land by her deed to David T. Berrier?" We do not think the principle contended for by plaintiff, from the view we take of the language in the will and intent of the testator, applicable here. We cite the authorities in the carefully prepared brief of her counsel: "A grantee in a partition deed is not estopped to set up an after-acquired title. . . . The fact that there are covenants of warranty in a partition deed do not change the estate conveyed, and therefore, do not create an estoppel." In *Coble v. Barringer,* 171 N. C., 449, it is said: . . . "The office of a covenant of warranty is, of course, not to enlarge or curtail the estate granted in the premises of the deed, but the covenant is intended as an assurance or guaranty of the title. *Huntley v. Cline,* 93 N. C., 458; *Williams v. Lewis,* 100 N. C., 142; *Harrison v. Ray,* 108 N. C., 215; *Jones v. Myatt,* 153 N. C., 230; *Weston v. Lumber Co.,* 162 N. C., 165; *Stallings v. Walker,* 176 N. C., 321; *Walker v. Walker,* 185 N. C., 385." See, also, *Bradford v. Bank,* 182 N. C., p. 230.

The general principle of covenants, not discussing partition deeds, is stated in *Baker v. Austin,* 174 N. C., 434, citing numerous authorities, as follows: " 'Where a deed is sufficient in form to convey the grantor's whole interest, an interest afterwards acquired passes by way of estoppel to the grantee.' . . . The general rule is thus stated in 16 Cyc., 689, with full citations in the notes: 'If a grantor having no title, a defective title, or an estate less than that which he assumed to grant, conveys with warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit by way of estoppel.' "

Ordinarily, "we hear and determine a case here according to the theory upon which it was tried in the court below." *Coble v. Barringer,* 171 N. C., p. 447, and cases cited.

The case was tried out on the theory as set forth in plaintiff's brief: "Where the will or deed provides for a forfeiture in case of breach of

condition, the relief to which the grantee or heirs of devisee is entitled is the recovery of the property. The court will, in so far as it is possible, construe a will according to the intent of the testator. Here these two children were given a larger portion of the estate, and were charged with the support of the mother. The penalty for a failure on the part of either was not left to be found by the court, but was provided in the will—the loss of the land and for the land to go to *'some one who will care for her.'* "

Defendant contends that "the designation of the person to take over is too indefinite." It is not necessary to discuss this question in the decision of the case. The principle is laid down in *Thomas v. Clay,* 187 N. C., p. 783, and cases cited, which hold: "It is well established by an unbroken line of decisions that there must be found within the terms of the declaration of trust a *cestui que trust,* and if there is no certain and complete beneficiary named who may come into a court of equity and claim and establish their right to the fund and to the trust, it will be void for uncertainty. 25 R. C. L., 1189, and cases cited, among others *Witherington v. Herring,* 140 N. C., 497." *Hester v. Hester,* 37 N. C., 330; *Bridges v. Pleasants,* 39 N. C., 26; *Weaver v. Kirby,* 186 N. C., 387; *Ragan v. Ragan,* 186 N. C., 463.

The main and vital contest in this action depends on the meaning of the following words in the will: *"For them both to see that their mother don't suffer their care, if either of them fail to take care of her for their part to go to some one who will care for her."*

It is clear that the husband, W. A. Berrier, though awkwardly expressed, did not want his wife to suffer during her life and her care was left to both plaintiff and David T. Berrier, grantor of defendant. "If either fail their part to go to some one who will care for her." Plaintiff contends that she cared for her mother and her brother and his assignee did not, and therefore, David T. Berrier and his assignee, the defendant, was divested of the title to the land. That the language in the will was a condition subsequent, and her brother having failed to care for her mother, and she having done so, the condition was broken and she was entitled to the land. It is certain by dividing the 200 acres of land between plaintiff and her brother, David T. Berrier, the testator, W. A. Berrier, providing homes for both his children, indicated that both could not give personal care to his wife—both were charged with their mother's care. His wife could not be in two places at the same time, be with his son and daughter both. The liberal and reasonable construction of the intent of testator, in our opinion, was that the land of the one who did not care for her would be charged with the proportionate part of her care. If both failed her, anyone who had

to furnish her care would receive their part—the part of both, rent and land, could be subjected to her care and support. Elizabeth Berrier, the wife, had the right to a sufficient sum out of the rent and land for her reasonable care and support. Plaintiff, in taking her mother to live with her, did nothing more than she was bound to do. She, under the will took her land *cum onere* with the burden to help care for her mother. After taking the mother she could then call upon her brother to contribute his part.

1 Tiffany Real Property, 2 ed., sec. 80, says: "On the principle of hostility to conditions, before referred to, a condition precedent is construed strictly in favor of vesting the estate, *while a condition subsequent is construed strictly against divesting the estate.*" (Italics ours.)

3 Thompson on Real Property (1924), sec. 1970, says: "Conditions subsequent are not favored in law. When the terms of the grant will admit of any other interpretation they will not be held to create an estate on condition. If no words of condition are used, and no words indicating an intention that under any circumstances the estate may be forfeited, or may revert to the grantor or his heirs, or that he or they may reënter and hold the land, and there is nothing in the nature of the acts to be done by the grantee indicating that the estate is to be held upon condition, the deed will be held to convey an estate to the grantee and his heirs forever. The deed will not be held to create an estate upon condition, unless the language to that effect is so clear as to leave no room for any other construction. Thus, where parents conveyed land to their son, reserving to themselves a life estate, and stating in the deed that such son 'is to pay the taxes on said land, and has to support the grantors during their natural lifetime, and at their death the son shall have possession,' the land was not conveyed upon a condition subsequent, because no words of condition were used, and there was no clause of reverter or reëntry, and no intention to create a strict condition can be gathered from the whole instrument. 'To say the stipulation in the deed to pay the taxes and support the grantors is a condition subsequent, the nonperformance of which will defeat the estate granted, is to make a stipulation for the parties which they did not see fit to make for themselves.' "

Plaintiff and defendant's grantor took possession of the land under the will with the burden. They both became bound to care for their mother. The title was vested—there was no condition subsequent. Courts will always construe clauses like the present one, if they can reasonably do so, as a covenant and not a condition, so as to avoid a forfeiture.

3 Thompson, *supra,* part sec. 1976, is as follows: "Upon covenants, the legal responsibility of their nonfulfillment is, that the party violating them must respond in damages. The consequence of the nonfulfillment

of a condition is a forfeiture of the estate. The grantor may reënter at his will and possess himself of his former estate."

We think the position here taken is fully borne out by the decisions of this State. *McNeely v. McNeely,* 82 N. C., 183; *Helms v. Helms,* 135 N. C., 164; rehearing, 137 N. C., 206, and cases cited; *Lumber Co. v. Lumber Co.,* 153 N. C., 49; *Fleming v. Motz,* 187 N. C., 593, and cases cited. The distinction between a covenant, which constitutes a charge on the land, and a condition subsequent, which works a forfeiture, is fully set forth by *Walker, J.,* in *Brittain v. Taylor,* 168 N. C., p. 271. It is further discussed by the same painstaking judge with a wealth of authorities, in *Hinton v. Vinson,* 180 N. C., 393. See, also, *Hall v. Quinn, ante,* 326; *Shields v. Harris, ante,* 520.

In construing the will to ascertain the intention of the devisor, we think that the will did not create a condition subsequent, and the language in no sense, from the facts and circumstances of this case, gave plaintiff the right to recover the land.

Defendant in his answer set up estoppel, as follows: "There was a charge made upon two hundred acres of land, devised to plaintiff and David T. Berrier, with certain provisions in said will for the care of their mother, which provisions appear by reference to said will, and that ever since the said deed was executed to David T. Berrier (this is a mistake from record—David T. Berrier took care of her at old home place about one year, then defendant), defendant has paid each year to the plaintiff such sum as the plaintiff found necessary and proper for him to pay for the care of her said mother, and also paid her doctors' bills, and has fully and amply compensated and settled with the plaintiff for any care her mother was to her, which sums the plaintiff has at all times accepted and received as in full settlement of such care and doctor bills, and the plaintiff is thereby estopped, as well as by her said deed, to make any further claim on account of the said matters referred to in the complaint."

From the construction given of the will that the language was a covenant, the acceptance by plaintiff and her brother, David T. Berrier, of the land, was an agreement to care for their mother. This, as before stated, was a charge on the land. It is not disputed that plaintiff fulfilled her covenant under the deed and cared for her mother. The plaintiff in the complaint demanded judgment for the land and if estopped by her deed to recover the land then for judgment for a certain amount named for the care of her mother to be declared a lien on the land. This amount could only be recovered, if at all, from David T. Berrier and his assignee, the defendant Adam L. Sink, for David T. Berrier's covenant in accepting the land with the charge on his portion to care for his mother. From

the entire record we think plaintiff cannot now recover from David T. Berrier or his assignee, the defendant, Adam L. Sink. The undisputed facts are: W. A. Berrier died 3 May, 1902. Elizabeth Berrier died 27 March, 1924. At the death of W. A. Berrier, his wife, Elizabeth Berrier, lived with David T. Berrier about a year and then she went to live with plaintiff and lived with her until her death. She lived with plaintiff over 20 years. During all those years plaintiff never demanded of her brother, David T. Berrier, or his assignee, Adam L. Sink, more than the amount paid her or indicated in any way that any claim would be made for a larger amount. The mother, the real beneficiary, made no demand.

After plaintiff had taken Elizabeth Berrier to live with her, she being liable for her care as well as her brother, David T. Berrier, she made a deed with the other heirs interested in the land to David T. Berrier for 100 acres, his half, of the land, by metes and bounds and in the deed signed by her, in the covenant clause, after reciting that they were seized of said premises in fee, *"except the interest of Mrs. Berrier under the will."* This same language is used in the deed from David T. Berrier to defendant for 48¼ acres of land of the 100 acres charged with the care of Elizabeth Berrier. Plaintiff testified that defendant, Adam L. Sink, gave her a check for $25 a year. In all he gave her $500 or $600, "he paid in the time he had the land until mother's death." "He paid me $25 and did get up some checks as high as $40. Never more than $40 a year. After the war in 1919, when times went up higher, he got up a little higher." She could read and write and signed her name on the orders—as set forth in statement of this case. Defendant kept a grocery store and plaintiff traded a good deal at the store. David T. Berrier sold 51¾ acres of the 100 acre tract, that had the charge on it to care for his mother, to R. L. McCrary. Plaintiff made no claim on him. "I never asked defendant for anything. He paid me some money every year. Paid the rent. The last check was $60. He paid $50 at one time and $40 at one time." She denied that she agreed with defendant to take $25 a year to take care of her mother.

Defendant testified that after he bought the land he had an agreement with plaintiff to assist in taking care of Elizabeth Berrier, $25 in advance each year. That for 19 years he paid what was required of him. He never paid any rent on the land, but for his part of her mother's expenses. David T. Berrier and W. F. McDonald corroborated defendant. The rental value of the land each year, according to defendant and several witnesses, was $25 a year. Plaintiff testified it was more. The disputed evidence is recited to show the controversy as to the purpose of payment. Elizabeth Berrier died 27 March, 1924. Plaintiff, who could read and write admitted receiving and endorsing the following:

COOK *v.* SINK.

A. L. SINK, *Grocer.*                                          No. 482.

LEXINGTON, N. C., January 19, 1924.

Pay to the order of Bettie Cooke $60.00.

For mother's support in full—paid to January, 1925.      A. L. SINK.

   To Commercial & Savings Bank, Lexington, N. C.

   (Endorsed by Bettie Cook, W. H. Berrier.)

Elizabeth Berrier died 27 March, 1924. Her support was paid in advance for the year. The language of the order was clear and explicit.

Under all the facts and circumstances of this case, we think plaintiff estopped by her acts and conduct to now claim defendant owes her anything. If she had rights, they have been abandoned and relinquished by her conduct—clearly indicating such purpose. She acquiesced in the payments for 19 years and the final amount paid her and receipt order endorsed by her "for mother's support in full—paid to January, 1925." We think the case comes under the principle of *DeLoache v. DeLoache,* 189 N. C., 394, where *Mr. Justice Varser* has ably digested the opinions of this Court on this character of estoppel. At p. 398 the Court says: "When the plaintiff accepted the check with the statement written thereon that it was in full settlement and then cashed the check, he is bound thereby." *Refining Corp. v. Sanders, ante,* 208.

The record discloses that plaintiff for over 20 years took tender care of her mother who died at an advanced age of 88 years. The burden was onerous and exacting—no higher duty can a child perform than that done by this plaintiff for her mother. Her reward is in the commandment: "Honour thy father and thy mother: that thy days may be long upon the land which the Lord thy God giveth thee." This duty she would no doubt have performed alone to this parent, but her father's will gave this tender care to her and her brother and charged certain property left them for this purpose. The defendant, her neighbor, bought her brother's property with her brother's charge on it, and each year he paid plaintiff what she asked, and the last order of payment was "for mother's support in full," which she received and signed for.

We think, the defendant's assignment of error, as follows, should have been granted: "That the court refused at the end of all the evidence to dismiss the action, and for judgment as of nonsuit. The defendant having renewed his motion."

For the reasons given, the judgment below is

Reversed.

ADAMS AND VARSER, JJ., concurring in the result.

We concur in the conclusion reached in the opinion of the Court. We do not concur in the construction of the will and in the reasoning by which this conclusion is reached.