The plaintiff complained for the sum of $1,376.50, one-half of the profits received by the defendant in the sale of the Clapp store lot, in Burlington, pursuant to an agreement with the defendant to purchase and dispose of said property, as partnership property, each sharing equally in the profits.
The defendant denied the partnership, claiming that there was an offer, on his part, to admit the plaintiff into a partnership agreement, as to this property, upon the performance of certain prerequisities by way of payments by plaintiff, which were never performed; and the defendant further pleaded that a full and complete and final settlement with the plaintiff for all moneys paid, and for all things due him, was had on 14 April, 1923.
The jury returned the following verdict:
"1. In what amount, if anything, is the defendant indebted to the plaintiff? Answer: `Yes, $500.'"
Two checks were given by defendant to plaintiff during these transactions, as follows: *Page 395 
 (1) "BURLINGTON, N.C. 4-12-1923. No. 11953.
Alamance Bank Trust Co., 66-135.
"Pay to the order of T. B. DeLoache $500.00. Five Hundred Dollars issued ................................ Dollars. For ________________________________
 A. V. RAY BOONE, Sec. Treas. C. W."
This check contained on the back thereof the following:
"Delivered to W. F. DeLoache in payment for money spent upon the Clapp building, Burlington. N.C.
 T. B. DeLOACHE, W. F. DeLOACHE."
 (2) "BURLINGTON, N.C. 4-14-23. No. ___
Alamance Bank Trust Co., 66-135.
"Pay to the order of W. F. DeLoache $68.71. Sixty-eight 71-100 ........................................ Dollars. For ____________________________________
T. B. DeLOACHE."
This check contained on the back thereof the following:
"Received of T. B. DeLoache a complete and full settlement for sale of Clapp store and all accounts up to 4-14 day, 1923.
 DeLOACHES. W. F. DeLOACHE."
The record shows no challenge against the validity of the entry on the back of the first check, but the plaintiff alleges that the entry on the back of check No. 2 resulted from the defendant's intent to cheat and defraud the plaintiff, and that he falsely and fraudulently endorsed the same on the back of said check.
The plaintiff says that check No. 1 was received by him from the sale of the Clapp store, which he agreed to, and that he endorsed that check. He further said that he had paid only $450.00 on the purchase price of the Clapp store, and the $500 was for the purpose of repaying this, with interest. He further says that the entry of a complete and full settlement was on check No. 2, when he signed it.
It appears from the evidence of both the plaintiff and the defendant, that the amount, to wit, $68.71, represented by check No. 2, was arrived *Page 396 
at after the plaintiff and the defendant had figured for some time with a big bunch of papers, and that this is the amount that the defendant stated was the correct result of the "casting up" of the accounts between them. It appears that the papers from which they reckoned were destroyed soon thereafter, with the knowledge of both parties. The plaintiff further stated that the defendant told him at the time of the delivery of check No. 2 that, "this check will make us square for the repairs alone," and that the plaintiff replied, "Look here, this check covers everything. Looks to me like you are trying to claim this check in settlement of the store trading and everything. That does not look like business to me."
The entry on the back of the check No. 2, was read by plaintiff and the evidence for plaintiff shows further discussion of its scope and effect. The plaintiff claimed that he relied upon the defendant's statement that it only related to the repairs on the Clapp store, in accepting the check. It further appears that plaintiff cashed this check on or before 17 April, 1923.
There was much testimony tending to show the respective contentions of the parties, as to the other phases of the transactions involved.
There are many exceptions appearing in the record aimed at the reception and rejection of evidence during the trial, which become immaterial in light of the views of this Court upon the plea of settlement in defendant's answer, and, inasmuch as they may not occur in another trial of this cause, they are not now decided.
The defendant's chief contention is that the trial court did not give him the full benefit of the effect of the settlement evidenced in the entry on check No. 2, as above set out, and that the court was in error in submitting to the jury, as a question of fact, the issue of debt to be determined by them from the evidence, as to whether the defendant's is indebted to the plaintiff, directing them that, if they "find by the greater weight of the evidence that he is indebted to him," to answer the issues in such sum as they may so find.
The defendant also excepted to the refusal of the trial court to sustain his motion for judgment as of nonsuit. We will consider the motion for nonsuit only as it applies to the question of fraud.
This Court is of opinion that the trial court erred in its charge to the jury on the issue of debt, in so far as the same is affected by the defendant's plea of full and complete settlement of account and satisfaction, set out on check No. 2. *Page 397 
It appears clearly from the plaintiff's own evidence that he was fully apprised of all the facts with reference to the accounts representing the moneys paid out, by him and by the defendant, in the renovation and repairs of the Clapp store building (after the had paid his $450 on the initial payment on the purchase price), up until the sale of the Clapp store to one, Brown. This sale was made with his knowledge and consent. The $500 check received by the defendant as a cash payment from Brown, was delivered to plaintiff. This check is set out above as check No. 1. After that was done, the parties came together and were in conference for some time, "figuring up" their respective contentions, and from this, the sum of $68.71 was arrived at and paid to plaintiff by check No. 2, with the statement endorsed thereon that it was a "complete and full settlement for sale of Clapp store and all accounts up to 4-14 day, 1923."
It is admitted that these latter figures mean 14 April, 1923.
It appears that this check No. 2, is dated 14 April, 1923, and that it was paid on 17 April, 1923, and that plaintiff endorsed the same and received that proceeds thereof.
Eliminating, at present, the question of fraud, we are of the opinion that this case comes within the doctrine announced in Kerr v. Sanders,122 N.C. 635. In that case there was a controversy as to amount due for certain services, and in a letter of discharge, the defendant sent to the plaintiff, a check for $75.00 with the notation thereon, "in full for services." The plaintiff endorsed thereon: "this check accepted for one month's services, beginning 4 September and ending 4 October, 1923." He then collected the check and used the money. Plaintiff contended that he had refused this proposition a few days before that and that he, thereby, did not intend to accept this check in full settlement. The Court says: "The plaintiff must have known what was meant by the words written on the face of the check, `in full for services,' enclosed in the letter discharging him from the service of the defendants. It is certain he was not inadvertent to this language `in full for services,' as he would not have endorsed on it `accepted for one month's service,' and the jury have found against him. The plaintiff had no right to change this check or to accept it for any other purpose than that stated in the letter and check."Long v. Miller, 93 N.C. 233; Pruden v. R. R., 121 N.C. 509. The Court then makes this further statement: "This doctrine is based on the idea of contract. `It takes two to make a contract.' The offer of the defendants and the acceptance by the plaintiff was a contract — a meeting of minds. If plaintiff were allowed to accept it for a different purpose than that stated by defendants, it would be to allow him to make a contract with defendants without their knowledge or consent." *Page 398 
In the instant case, the statement on the check is clear and complete and was clearly understood by the plaintiff. Non constat, that he was unwilling to accept it in full settlement when he cashed the check, because he questioned and disputed that it was a complete settlement when the check was first given him.
In Moore v. Accident Assurance Corporation, 173 N.C. on page 538,Walker, J., says: "This Court has held in numerous cases that when on the face of the check is stated the purpose for which it is given, or the condition of the payment which it represents, the party to whom it is given or sent cannot accept and use it and afterwards repudiate the condition." Citing, Kerr v. Sanders, supra; Armstrong v. Lonon, 149 N.C. 434; Aydlettv. Brown, 153 N.C. 336. In the latter case, the Court says: "He will not be permitted to collect the check and repudiate the condition."
Of course, check No. 2 was, until accepted by the plaintiff, a mere offer or proposition from the defendant; it was competent for such offer to be waived or withdrawn, but, when the plaintiff accepted the check with the statement written thereon that it was in full settlement and then cashed the check, he is bound thereby. Ore Co. v. Powers, 130 N.C. 152; Petit v.Woodlief, 115 N.C. 120; Cline v. Rudisill, 126 N.C. 525; Wittkowsky v.Baruch, 127 N.C. 315; Armstrong v. Lonon, supra; Drewry v. Davis,151 N.C. 295.
In Supply Co. v. Watt, 181 N.C. 432, the Court says in reference to a check sent in settlement of a disputed account: "There was no ambiguity or grounds for misunderstanding defendant's tender and offer of settlement. Obviously, he wanted to adjust all of their differences at one and the same time. The plaintiff had its choice, and we think it is precluded by its acceptance and election, knowingly made. The check should have been returned if the conditions of its acceptance were not satisfactory, or, at least the defendant should have been given an opportunity to say whether he would waive the conditions and allow the check to be credited on account."
In the instant case there is no evidence that the defendant waived the entry of full settlement on the back of this check.
In Long v. Rockingham, 187 N.C. 210, Clarkson, J., says: "He could not accept the money derived from the sale and at the same time reserve the right to repudiate the sale."
Business transactions cannot be safely conducted upon secret reservations of mind that are totally inconsistent with the upon acts. It was open to the plaintiff to refuse to accept check No. 2 if he was unwilling to affirm its provisions in every respect. When he accepted its proceeds he made effective and binding its every stipulation. Ore Co. v.Powers, 130 N.C. 152; Aydlett v. Brown, 153 N.C. 334. *Page 399 
For some time it was held that there was not consideration to support an agreement to accept less than was found, upon a later investigation, to be due, and, therefore, such agreements were invalid. At common law, as in force in 1776, this was undoubtedly true. We find this most learnedly discussed by Hill, C. J., in Dreyfus Co. v. Roberts, 75 Ark. 354;87 S.W. 641.
Although this doctrine was announced by such high authority as Lord Coke, in 1602, and came to us as a part of the English Common Law when the Colonies formed themselves into an independent government, North Carolina set the question of "no consideration" at rest in 1875, when it enacted chapter 178, Laws 1874-5, now C. S., 895, and since that enactment the modern doctrine, upholding these settlements, has prevailed in this State.
Settlements help the progress of society, and tend towards the preservation of peace. It is for the interest of the State that, not only shall there be an end to litigation, but that settlements that prevent litigation, when fairly and honestly arrived at, shall be upheld.Wittkowsky v. Baruch, supra, says that this statute, now C. S., 895, supports and makes valid such settlements, changing the old rule as upheld in McKenzie v. Culbreth, 66 N.C. 534, and in Bryan v. Foy, 69 N.C. 46.
The plaintiff, in Cline v. Rudisill, 126 N.C. 524, took money tendered, and paid into court, stating in writing that he was "claiming still the balance due." This was fatal to his claim of the balance due and his action failed.
That this in, upon the instant record, eliminating the question of fraud, a question of law, is clear. As stated in Mercer v. Lumber Co.,173 N.C. 49, the test is that it shall appear that, "this intent is so clear that there could be no disagreement about it."
However, it appears that this evidence on behalf of the plaintiff as to his view of the meaning and effect of the entry of settlement on check No. 2, is incompetent for another reason. It would be, to receive it, a clear contradiction of a contemporaneous written instrument, the benefits of which he had elected to take, with a full knowledge of its contents. The plaintiff not only could read, but he did read this entry of settlement and knew its scope, for he said to defendant: "Look here, this check covers everything. It looks to me like you are trying to claim this check in settlement of the store trading and everything. That does not look like business to me."
Evidence of promises made at the time of the execution of the written contract, inconsistent with such contract, is incompetent. Slayton v.Comrs., 186 N.C. 695.
It is safe to hold to the rule announced in Walker v. Venters,148 N.C. 388, that, "the written word abides." *Page 400 
In Ray v. Blackwell, 94 N.C. 10, Smith, C. J., says: "It is a rule too firmly established in the law of evidence to need a reference to authority in its support, that parol evidence will not be heard to contradict, add to, take from or in any way vary the terms of a contract put in writing, and all contemporary declarations and understandings are incompetent for such purpose."
That the plaintiff could and did read the entry evidencing a settlement in full in admitted. If he had not done so he would have been guilty of negligence. Griffin v. Lumber Co., 140 N.C. 514; Dellinger v. Gillespie,118 N.C. 737; School Committee v. Kesler, 67 N.C. 443.
The plaintiff read and knew the contents of the entry signed by him, and, therefore, being fully aware of its contents and meaning, he is concluded thereby, in the absence of fraud. He pleads no other basis for relief than fraud.
This elementary rule has been declared in a phalanx of decisions in this State, too strong to upset now.
The foregoing is upon the view of the case that no fraud is shown by the evidence. If, however, fraud shall appear at the next trial, it will be open to the plaintiff to relieve himself of the effect of this entry on check No. 2.
The evidence now appearing in the record, does not, in our opinion, show fraud. Beaman v. Ward, 132 N.C. 68; Printing Co. v. McAden, 131 N.C. 178;Irvin v. Jenkins, 186 N.C. 752.
Inasmuch as plaintiff has pleaded fraud, in this case, he will be allowed to proceed as he may be advised.
We suggest that appropriate issues be submitted, if the evidence at the next trial will warrant, upon the question of fraud, the settlement, and the debt, separately, so that each question may stand on its merits, unmixed with the others.
The general rule appears to be to dispose of the plea in bar, whether an issue law of fact, before proceeding further. McAuley v. Sloan, 173 N.C. 80;Comrs. v. White, 123 N.C. 534.
The plea of settlement in the instant case is clearly a plea in bar.Jones v. Beaman, 117 N.C. 259; McAuley v. Sloan, supra.
As to whether such a plea as this shall be passed on by the jury, along with the other issues, is largely a matter of discretion with the trial court, and where no disadvantage results to either party, this Court does not interfere. The same rule applies to the number and form of the issues.
"The true test is, did the issues afford the parties opportunity to introduce all pertinent evidence and apply it fairly?" Tuttle v. Tuttle,146 N.C. 484. When the issues meet this test, they are sufficient.
It is ordered that there be a
New trial. *Page 401