W. J. WINSTEAD AND WIFE, IOLA WINSTEAD, J. C. WINSTEAD AND WIFE, DELLA WINSTEAD, W. E. WINSTEAD AND WIFE, PAULINE WINSTEAD, R. S. WINSTEAD AND WIFE, MARY WINSTEAD, BETTIE WINSTEAD ALFORD AND HUSBAND, Z. T. ALFORD, AND GRACIE WINSTEAD v. LULA D. FARMER, EXECUTRIX OF THE ESTATE OF WILEY W. FARMER, AND LULA D. FARMER.

(Filed 23 March, 1927.)

**1. Contracts—Estoppel—Wills—Devise.**

The deceased having taken lands by devise subject to a charge of five hundred dollars in favor of M., and by purchase from B. a certain other tract of land, died leaving a will by which he bequeathed the heirs at law of M. now deceased intestate, certain sums of money in lieu of their shares in the said five hundred dollars, with further provision that should said heirs at law be paid moneys by him during his life, it would be in lieu of the amount they would receive under his will: *Held,* a receipt signed by such heirs at law, of full age, for sums of money so paid, was an estoppel by contract to declare a parol trust in favor of M., their ancestor. The modern doctrine of estoppel and election discussed by CLARKSON, J.

**2. Same—Receipts.**

> Where the testator devises certain sums of money to be accepted by
> the heirs at law of M., deceased, in lieu of a charge made upon lands
> previously devised to him by the ancestor of M., with provision that
> moneys devised to said heirs by the testator were to be received by them
> in satisfaction of that given to them respectively, moneys so accepted by
> them in the testator's lifetime when the devisees were of age, and receipt
> given with reference to the will, will impute to them knowledge of the
> provisions of the will, and will operate against them as an estoppel by
> contract.

CONNOR, J., not sitting.

APPEAL by defendants from *Barnhill, J.,* at November Term, 1926,
of WILSON. Modified and affirmed.

The necessary facts will be set forth in the opinion.

*W. A. Finch, M. S. Strickland, Woodard & Rand, and Manning &
Manning for plaintiffs.*

*S. G. Mewborn and Connor & Hill for defendants.*

CLARKSON, J. (1) Adelphia Farmer died prior to 27 November,
1899, leaving a last will and testament dated 18 January, 1881, duly
probated in Wilson County, N. C., in which she devised to Wiley W.
Farmer a certain tract of land in said county, subject to a charge of
$500 to be paid Mary F. Winstead upon her arrival at the age of
21 years. Adelphia Farmer was the grandmother and Wiley W. Farmer
the uncle of Mary F. Winstead.

(2) Mary F. Winstead died in August, 1906, and left surviving J. C.
Winstead, her husband (who since married Della Winstead), and the
following children: (a) W. J. Winstead, (b) W. E. Winstead, (c) R. S.
Winstead, (d) Gracie Winstead, (e) Bettie Winstead Alford, all of
whom, with their respective wives and husband, and one unmarried, are
plaintiffs in this action.

(3) Lula D. Farmer has duly qualified as executrix of the last will
and testament of her husband, Wiley W. Farmer, and in her official and
individual capacity is defendant in this action.

(4) John F. Bruton, commissioner, sold on 27 November, 1899, to
Wiley W. Farmer, for $425, a tract of land in fee simple purchased by
him as the highest bidder at commissioner's sale. Deed for the said land
was executed 21 December, 1899, and duly recorded. This was a tract
of land containing about seventy acres, and a partition proceeding was
brought by Wiley W. Farmer, who owned two-fifths undivided interest,
against the Joyners, who owned three-fifths interest. Wiley W. Farmer
died in February, 1924, leaving the said tract of land to defendant,

Lula D. Farmer. At the time Wiley W. Farmer purchased this land Mary F. Winstead had reached the age of 21 years.

*The contentions:* Plaintiffs allege that the land was purchased by Wiley W. Farmer from John F. Bruton, commissioner, with the money left by Adelphia Farmer and held in trust by him for Mary F. Winstead and her heirs; that it was agreed between Mary F. Winstead and Wiley W. Farmer that title was to be taken in her name, but through inadvertence or mistake it was taken in Wiley W. Farmer's name; that immediately after the purchase she and her husband moved on the land and paid the tax; that in 1906 Mary F. Winstead died and her husband, in 1909, moved off the land and went to Elm City, N. C., to live; that Wiley W. Farmer repeatedly stated that he was holding the land for the use and benefit of Mary F. Winstead, and at her death reiterated the statement for her children, plaintiffs in this action. It is alleged that he had frequently promised to reconvey the land.

Defendant denied the allegations of plaintiffs and alleged that as to Mary F. Winstead living on the land with her husband, J. C. Winstead, it was because they had several children and had no land; that it was the agreement that they should live there without rent and pay the tax in lieu of Wiley W. Farmer paying interest on the $500; that they lived on the land until 1906, when Mary F. Winstead died and her husband, in 1909, left it, and Wiley W. Farmer took immediate possession of the land and received the rents until his death, and no demand was ever made on him for the land by Mary F. Winstead before her death or by the plaintiffs, her husband and heirs at law; that Wiley W. Farmer had been in the possession of the land some fifteen years after Mary F. Winstead's death before this action was brought.

Wiley W. Farmer made his last will and testament on 22 August, 1912. Among other things mentioned, in Item 3, he recites the fact of the $500 left by Adelphia Farmer, and says: "It will be seen that my mother devised certain land to me and directed that I should pay to my niece, Mary Florence Farmer, who afterwards married Jesse C. Winstead, the sum of $500; during the life of the said Mary Florence Winstead, she and her husband occupied a tract of land owned by me for which I charged no rent, upon the agreement with her that the sum of $500 should not bear interest; the said Mary Florence Winstead and her husband occupied the tract of land until 1 January, 1909, under the agreement aforesaid for this reason, in fixing the said date the date from which interest on the sum of $500 is to be calculated, and it is my purpose that the sum of $500 herein directed to be paid to the issue of the said Mary Florence Winstead, shall be in full payment and satisfaction of any and all claims which she or any one claiming under her now has, or may have against my estate or against the land devised to

me by my mother as aforesaid, and the acceptance by the issue of the said Mary Florence Winstead of the said sum, as well as of the further sum of one-third of the proceeds of the sale of the said farm shall be, and shall be deemed a full release of my estate and of the tract of land devised to me by my mother therein of all claims which they or any one of them shall have against my estate."

In a codicil dated 24 December, 1913, he recites that he has sold the land mentioned in Item 3 of the will, and in lieu in Item 1: "I direct my executrix named in said will out of any money in her hands belonging to my estate, to pay to the issue living at my death of my deceased niece, Mary Florence Winstead, wife of Jesse C. Winstead, per stirpes and not per capita, the sum of $500, with interest thereon at the rate of six per cent from 1 January, 1909, until paid, and if said sum, with interest, does not amount to $1,000, then I direct my said executrix to add thereto a sufficient amount to make the amount paid to the said issue of my deceased niece $1,000; the said sum to be accepted and received by the said issue in full settlement, satisfaction and discharge of any and all claims which they may have against me or my lands by reason of the matters and things set out in said Item 3 of said will."

In a codicil dated 10 June, 1916, he recites: "Whereas, by Item 1 of the said codicil, dated 24 December, 1913, I directed by executrix to pay to the issue living at my death of my deceased niece, Mary Florence Winstead, per stirpes and not per capita, a sum of money therein expressed; in any event not less than one thousand dollars; and, whereas, now some of the children of my niece have arrived or are about to arrive at the age of twenty-one, and have called upon me for money, and I have paid or contemplate paying them or some of them certain sums in lieu of their interests or the interests of their issue in said sum named in said Item 1 of said codicil. Now, therefore, in the event that I shall pay to any child or children of my deceased niece any sum of money during my lifetime and shall take receipt for same, I direct that my executrix shall not pay to such child or to the issue of such child, or to such children or to the issue of such children, any share or shares in said sum, but as to such child or children or to the issue of such children, the legacy shall be deemed revoked; provided, however, he, she or they shall be considered in determining the number of shares into which the same shall be divided, and my executrix is directed to pay to such child or children or the issue of such child or children to whom I have paid any sums during my lifetime, his, her or their share, as provided in Item 1 of said codicil."

We have set forth the reference to the $500 in the will and codicils. The will and codicil of 24 December, 1913, are especially material upon the plea of estoppel made by defendant. Three of the plaintiffs, after

the execution of the will and codicils, (1) W. E. Winstead, on 16 September, 1916, for $146.50; (2) W. J. Winstead on 8 August, 1917, for $151.50; (3) Bettie W. Alford on 23 October, 1920, for $182.54, signed, sealed and delivered to Wiley W. Farmer the following paper-writings, all duly witnessed, all similar to the W. E. Winstead except the amounts:

"Received of W. W. Farmer, one hundred forty-six and 50/100 dollars in full payment of any sum due me as a child of Mary Florence Winstead, by the said W. W. Farmer, by virtue of the last will and testament of Adelphia Farmer, and in satisfaction of any interest that I may have in any legacy contained in the last will of the said W. W. Farmer. Witness my hand and seal this 6 September, 1916. W. E. Winstead. (Seal.) Witness, E. A. Darden."

The record shows that the court below charged the jury correctly, and there are no exceptions to the charge: "The only question presented by this appeal is the exception and assignment of error to the judgment rendered, and the refusal of the trial judge to sign the judgment tendered by the defendant, and the controversy is as to the force and effect of the receipts and releases executed by the plaintiffs, who are the real parties in interest, set out in the defendant's answer and found by the jury to have been executed."

The following issue was answered by the jury "Yes":

"Did Wiley W. Farmer receive title to the premises described in the complaint under deed dated 21 December, 1899, recorded in Book 55, at page 338 in trust for the use and benefit of Mary Florence Winstead, as alleged?"

It is admitted that J. C. Winstead, the husband of Mary F. Winstead, who held a life estate, as tenant by the curtesy, was barred and he and his second wife, Della, plaintiffs in the present action, submitted to a voluntary nonsuit.

The judgment of the court below, in part, was as follows: "The court is of the opinion, and so holds, that the receipts of W. E. Winstead, W. J. Winstead and Bettie Winstead Alford, respectively, of the several amounts paid in by W. W. Farmer, deceased, and the signing by them of the receipts as determined by the jury, was not an election of remedy on the part of the said plaintiffs, and the court is further of the opinion and so holds, that said respective plaintiffs are not estopped thereby from prosecuting this action."

We think that W. E. Winstead, W. J. Winstead and Bettie W. Alford are all estopped. They were all *sui juris*. The language of the paper-writings is clear and explicit, and they knew, or by the use of due care should have known the provisions in the will and codicils of Wiley W. Farmer. The will and codicils set forth in detail the whole history of the $500 legacy left by Adelphia Farmer. There was no fraud or mutual

mistake invoked. The receipts, which are under seal, state in plain English that the amount is *in full payment* (1) any sum due as a child of Mary Florence Winstead by virtue of the will and testament of Adelphia Farmer; (2) *in satisfaction* of any interest in any legacy the party may have contained in the last will of said Farmer.

At the time this money was paid by Wiley W. Farmer to the three children of Mary F. Winstead, there was no suggestion by them, so far as the record shows, that the land Wiley W. Farmer purchased from John F. Bruton, commissioner, was held in trust. The recital in the will and codicil which they knew or ought to have known by the exercise of ordinary care when they signed the paper-writings under seal, (1) shows that he did not purchase the land in trust; (2) that the sum in money paid them "to be accepted and received by the said issue *in full settlement, satisfaction and discharge of any and all claims* which they may have against *me or my lands by reason* of the matters and things set out in said Item 3 of said will."

In *Young v. Grote,* 4 Bing., 253 (1827), Shirley's Leading Cases, 3 ed., p. 400, it is said: "Estoppels (which Lord Coke considered 'a curious and excellent sort of learning'), are of three kinds: (1) By matter of record; (2) by deed; (3) by conduct (otherwise known as *in pais)* . . . (p. 402). The doctrine of estoppel by conduct as extracted from *Pickard v. Sears,* 6 A. & E., 469, and *Freeman v. Cooke,* 2 Ex., 654, may, without attempting scientific precision, be thus stated: Where one person by his words or conduct represents a certain state of things to exist, and thereby induces—no matter whether he intended it or not—another to alter his position, that other is not to be prejudiced by the perfidy or fickleness of the first person." *Meyer v. Reaves, ante,* at p. 178.

Bigelow on Estoppel, 6th ed. (1913), under Estoppel *in Pais,* ch. 13, p. 489, speaking to the subject, says: "Estoppel *in pais* arises (1) from contract; (2) independently of contract, from act or conduct which has induced a change of position in accordance with the real or apparent intention of the party against whom the estoppel is alleged; and it designates some present or past fact fixed by or in virtue of the contract, or of the act or conduct in question. . . . (p. 491). The whole subject, as we have intimated, is modern, and, rejecting most of the old nomenclature, may be considered under two or three heads having modern names. One class of cases is designated in this work as Estoppel by Contract, a term which is intended to embrace (1) *all classes in which there is an actual or virtual undertaking to treat a fact as settled, so that it must stand specifically as agreed,* (italics ours) and (2) all cases in which an estoppel grows out of the performance of the contract by operation of law. Whether all the cases here referred to ought to be

called estoppels is now probably too late to inquire, for it would be vain to resist the current. Much of it must certainly have fallen without the lines of estoppel as laid down by Coke; how some of it, had it arisen, would have been disposed of, is not clear. The truth appears to be that the requirements of modern society could not have been expressed in the terms of the old law, and the band had to be unloosed. . . . (p. 492). Besides these two classes of cases, the doctrine, or at least the name, of estoppel has been extended during the present century, and especially within thirty or forty years past, to a variety of cases, embraced in the present work under the heads of Election, and Inconsistent Positions, herein called *Quasi*-Estoppel, and follows the two subjects before mentioned. . . . Thus in the case of waiver of rights, which is often called a case of estoppel by conduct, the ground upon which the waiver rests is, at least in ordinary cases, knowledge by *both* parties of the facts; it is not to be supposed that by calling the case 'estoppel by conduct' knowledge of facts on the part of the one claiming the waiver is fatal, as in the typical example of estoppel by conduct, to wit, misrepresentation of some fact (p. 493). This is enough to indicate that there may be danger in using the term 'estoppel' freely. It is common enough at present to speak of acquiescence and ratification as an estoppel. Neither the one nor the other, however, can be more than part of an estoppel, at best. An estoppel is certain, being a legal inference or conclusion arising from acts or conduct; while acquiescence and ratification, like waiver, are but matters of fact which might have been found otherwise."

There are so many variant attitudes of estoppel that we quote fully from Mr. Bigelow. The kind we consider applicable in the present action is a liberal and modern view, founded on agreement or contract.

It has been said "An estoppel *in pais* is to be resorted to solely as a measure to prevent injustice—always as a shield, but never as a sword."

In *Overall Co. v. Holmes,* 186 N. C., at p. 431, among the definitions given of contract, is the following: "Contract is the agreement of two minds, the coming together of two minds on a thing done or to be done."

The language of the paper-writing, in the present case, is the "coming together of two minds." The settlement by parties of full age, *sui juris,* with full knowledge of their rights. The paper-writing in controversy shows a complete offer and acceptance and an adjustment and satisfaction.

In the case of *Kerr v. Sanders,* 122 N. C., at p. 635, defendants sent plaintiff a check on which was written "in full for services." Plaintiff endorsed on the check "Accepted for one month's services," etc. The Court said: "The plaintiff must have known what was meant by the words written on the face of the check 'in full for services,' enclosed in the letter discharging him from the service of defendants. It is certain

he was not inadvertent to this language, 'in full for services,' as he would not have endorsed on it 'accepted for one month's service,' etc., and the jury have found against him. The plaintiff had no right to change this check or to accept it for any other purpose than that stated in the letter and check. *Long v. Miller,* 93 N. C., 233; *Pruden v. R. R.,* 121 N. C., 509. This doctrine is based on the idea of contract. 'It takes two to make a contract.' The offer of the defendants and the acceptance by the plaintiff was a contract—a meeting of minds." *DeLoache v. DeLoache,* 189 N. C., 394; *Colt v. Kimball,* 190 N. C., at p. 172; *Refining Corp. v. Sanders, ibid.,* at p. 209; *Cook v. Sink, ibid.,* at p. 631; *Schofield v. Bacon,* 191 N. C., 253.

It is said in *Freeman v. Ramsey,* 189 N. C., at p. 796, citing numerous authorities: "When the facts recited in deeds are of the essence of the contract, and where the intent of the parties to place a fact beyond question or to make it the basis of the contract is clear, the recital is effectual and operates as an estoppel against parties and privies." *Hays v. Askew,* 50 N. C., 63; *Meyer v. Reaves, ante,* 172.

In *Wright v. Fertilizer Co., ante,* 305, Mr. Justice Brogden, in a well considered opinion, held that the plaintiff Wright could not recover. The facts disclose that Wright kept the minutes of the corporation, and at a regular meeting in 1919 in the minutes had written the following: "Ordered that George W. Wright be paid a salary of $5,000 for the year 1919." At a meeting of the directors in 1920 he wrote in the minutes, "On motion, duly seconded, it was ordered that G. W. Wright be paid a salary of $6,500 for the year 1920." The salary was paid for 1919, and he drew the pro rata salary for ten months of 1920 at the fixed amount of $6,500 for the year and the remaining two months he drew $150 a month. Wright brought suit alleging that in December, 1919, the Fertilizer Company employed him for a period of five years, beginning 1 January, 1920, at a salary of $6,500 a year; that he was paid at this rate until November, 1920, when the payments to him were reduced to $1,800 a year, and afterwards increased to $2,100 a year. He was discharged in March, 1923. The suit was brought for $7,870.77, balance due on salary, etc. Plaintiff did not assert his right until after lapse of some four years, gave no notice to the corporation of his claim for five years at $6,500 a year before suit, and waited until the corporation passed into the hands of other parties. Plaintiff's salary was changed, which he accepted until he was discharged, and the record does not disclose that he made any protest or gave any notice whatever to the corporation as to his contention that he had a five-year contract for $6,500 a year. "The principle applicable to this state of facts is thus declared in *Hill v. R. R.,* 143 N. C., 557: 'It is a general rule of law, as well as of good morals and fair dealing, that if a party is silent

when he should speak or supine when he should act, he will not afterwards be permitted to either speak when he should be silent or to act when he has failed to do so at the first proper and opportune moment.' Applying these principles of law to the facts appearing upon the record, we hold that the plaintiff cannot now be heard to claim his excess salary."

The paper-writings in the present action were signed by W. E. Winstead, W. J. Winstead and Bettie W. Alford, in 1916, 1917 and 1920, respectively. The present action was begun 20 August, 1925—many years after the paper-writings were given.

Taking into consideration the language of the paper-writings and the setting of the parties, we think the paper-writings were clear and explicit and an estoppel by contract.

There is nothing more important than the keeping of contracts. A high compliment among men of honor is the expression that "He is a man of his word." In the present case, as so often said, "The written word abides."

The judgment below is modified according to this opinion.

Modified and affirmed.

CONNOR, J., not sitting.